BARSTOW, The AMOS C. See Case No. 337.

BARSTOW STOVE CO., (FORBES v.) See Case No. 4,923.

---

## Case No. 1,067.

BARTELSON et al. v. The CYNTHIA.

[25 Int. Rev. Rec. 384; 14 Phila. 411; 36 Leg. Int. 462; 8 Reporter, 773.]

Circuit Court, E. D. Pennsylvania. Oct. 31, 1879.

COLLISION—STEAM AND SAIL—CHANGE OF COURSE.

Circumstances justifying a sailing vessel in changing her course; it is the duty of a steam vessel, when about to pass a sailing vessel, to observe closely the course of the latter, as well as any conditions which may render a change of such course necessary, and to regulate her own movements accordingly. If she fails to do this she is derelict.

[Appeal from the district court of the United States for the eastern district of Pennsylvania.

[In admiralty. Libel by Bartelson and others against the tug Cynthia for collision. The district court entered a decree for libellant, (nowhere reported.) Respondent appeals. Affirmed.]

Finding of facts by the court: On the 25th of October, 1876, the steam tug Cynthia, with the loaded bark Haugesund in tow, was coming up the Delaware river from Girard point, on the ebb tide. She had reached the upper part of League island, when the schooner Bowdoin, bound to sea, crossed the bows of the bark, standing toward the Pennsylvania shore, with the wind W. S. W. When the schooner got in shore she tacked, and at this time the tug and bark were quite near her. The schooner lighted up her head sheets to enable her to luff, but she did not luff, and a collision resulted between the bark and her, by which both of them were considerably injured. The bark was in the charge and under the entire control of the tug, and from the poop deck of the latter there was an unobstructed view of the river, showing a clear channel toward the eastward or New Jersey shore. If she had changed her course in time, and had gone in that direction thirty or forty yards, the schooner would have had room to pass. and danger of collision would have been avoided. When the schooner tacked she was as near the western shore as it was safe for her to go, as, if she had prolonged her westward tack, and then had attempted to change to the eastward and had missed stays, she would have gone ashore.

A. L. Wilson and J. G. Johnson, for appellant.

Alfred Driver and J. Warren Coulston, for appellee.

McKENNAN, Circuit Judge. I have had some difficulty in coming to a satisfactory conclusion in this case, but, under all the circumstances, I think the decision of the district court is right. I do not assent to a broad assertion of the absolute right of a sailing vessel to change her course without reference to surrounding circumstances, nor can I affirm that a steamer is liable for the consequences of a collision with a sailing vessel, when she has observed all proper and necessary precaution to avoid it, simply because she did not foresee a possible change of the sailing vessel's course. But it is the duty of a steam vessel, when about to pass a sailing vessel, to observe closely the course of the latter, as well as any conditions which may render a change of such course necessary, and to regulate her own movements accordingly. If she fails to do this she is derelict. In this case, it seems to me, the change of tack by the schooner at the time when it was made, was not only proper but necessary. A prolongation of her westward tack, with the impending risk of being cast ashore, was not incumbent on her when the only reason for it was the possible danger of collision with the tug or her tow. Under the circumstances the probable occurrence of a change of tack ought to have been anticipated by the tug, and timely precautions adopted in view of it. To stop her, or slightly to change her course in time, would have been effectual. But she did neither of these until it was too late, and hence her dereliction was the primary cause of the loss. Whatever fault may be imputed to the

schooner does not affect the primary liability of the tug, and is not therefore, as was said by the district judge, a practical question in the case. A decree must be entered, that the libellant recover of the respondent, Zacharias Williamson, and his stipulator, Philip Hammerschlag, his damages, to wit, the sum of $2,000, with interest from March 14, 1879, and costs.